UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 01-8069CR-DIMITROULEAS

Case No: _____

18 U.S.C. 371
18 U.S.C. 1001
18 U.S.C. 1341
18 U.S.C. 1346
18 U.S.C. 1957
18 U.S.C. 2

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

LLOYD HASNER,
LISA FISHER, and
RICHARD ELLINGTON,

                    Defendants,

_____/

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### Count One

### CONSPIRACY

At all times relevant to this Indictment:

1.      The Palm Beach County Housing Finance Authority (hereinafter "the Housing

Finance Authority") was a public body created for the purpose of addressing the shortage of

housing and capital for investment in housing within Palm Beach County. Each of the seven members of the Housing Finance Authority was appointed by a member of the Board of County Commissioners of Palm Beach County.

2.      Defendant LLOYD HASNER was the Chairman of the Housing Finance Authority. In this capacity, LLOYD HASNER had a legal and ethical responsibility to perform his duties free from fraud, self-enrichment or self-dealing.

3.      LLOYD HASNER was also the owner of Hasner Realty Corporation, a real estate broker located at 11 S.E. 6th Avenue, Delray Beach, Florida.

4.      Defendant LISA FISHER was a real estate agent associated with Main Street Realty, a real estate broker located in Orlando, Florida. She also served as Executive Director of the Florida Association of Local Housing Finance Authorities.

5.      LISA FISHER was also the owner of Lisa Fisher & Co., located in Orlando, Florida, which provided consulting services related to real estate projects and public financing of real estate projects.

6.      Defendant RICHARD ELLINGTON, ESQ., was legal counsel to the Housing Finance Authority, and President of the Florida Association of Local Housing Finance Authorities. As legal counsel to the Housing Finance Authority, RICHARD ELLINGTON's duties included providing advice and counsel to the members of the Housing Finance Authority on subject areas such as conflicts of interest and prohibited financial transactions.

7.      The Internal Revenue Code authorized states to issue a limited amount of tax-exempt revenue bonds. Each year, the State of Florida, through the Division of Bond Finance

2

allocated its tax-exempt revenue bonds among various public entities within the state. The Housing Finance Authority annually received approximately $20-25 million in tax-exempt revenue bond authorizations, which it then used to finance housing projects within Palm Beach County.

8.      Florida Statute §159.606 established ethical standards of conduct for Housing Finance Authority officials. This statute prohibited LLOYD HASNER from having any interest, direct or indirect, in any contract or proposed contract for materials or services to be furnished or used in connection with any "qualifying housing development" being financed by the Housing Finance Authority. Florida law defines a "qualifying housing development" as any work or improvement located in the state of Florida, including real property, buildings, and any other real and personal property, designed or intended for the primary purpose of providing decent, safe, and sanitary residential housing for four or more families, at least 60 percent of whom had low, moderate or middle incomes.

9.      Florida Statute §112.313(7)(a) established ethical standards of conduct for all public employees. This statute prohibited  LLOYD HASNER from having any contractual relationship with any business entity that was doing business with the Housing Finance Authority. This statute also prohibited LLOYD HASNER from having a contractual relationship that would create a continuing conflict between his private interests and the full and faithful discharge of his public duties.

10.     Florida Statute §112.3143(4) prohibited any appointed public officer, including LLOYD HASNER,  from participating in any matter which would inure to the officer's special

3

private gain or loss, or which the officer knew would inure to the special private gain or loss of a relative or business associate of the public officer, without first disclosing the nature of his or her interest in the matter.

11.     In or about September, 1996, the exact date being unknown to the grand jury, LISA FISHER, through Lisa Fisher & Co., was hired as a consultant to Hawthorne Ltd. (hereinafter "Hawthorne"), a real estate development company.

12.     On or about November 13, 1996, LLOYD HASNER, as President of Hasner Realty, sent a letter to a person known to the grand jury registering LISA FISHER as a representative of Hawthorne in its capacity as potential purchaser of approximately 30 acres of land in Greenacres, Florida (hereinafter "the Greenacres Land").   LLOYD HASNER and LISA FISHER were aware that Hawthorne intended to propose developing the Greenacres Land using tax-exempt revenue bonds issued by the Housing Finance Authority.

13.     On or about November 15, 1996, LISA FISHER notified the Housing Finance Authority's financial advisor that Hawthorne wanted to submit a request for the Housing Finance Authority to fund a development on the Greenacres Land.

14.     At some time before November 18, 1996, LLOYD HASNER and LISA FISHER made an agreement that LLOYD HASNER, through Hasner Realty, would be paid 1.25% of the sale price of the Greenacres Land (hereinafter "the Chelsea Commons real estate payment") for his role in helping find the Greenacres Land for Hawthorne.

15.     On or about November 18, 1996, LLOYD HASNER voted to hire LISA FISHER as a consultant to the Housing Finance Authority at a rate of $5,000 per month for six months

4

plus $2,500 in expenses.  At the time of this vote, LLOYD HASNER did not disclose his existing agreement to receive the Chelsea Commons real estate payment.

16.     On or about December 3, 1996,  Hawthorne delivered a proposal to the Housing Finance Authority to develop the Greenacres Land as a residential housing development to be called "Chelsea Commons".

17.     On or about December 16, 1996, the Housing Finance Authority voted to finance the Chelsea Commons project using $16,155,000 in tax-exempt revenue bonds.  At this meeting, LLOYD HASNER declared an unspecified potential conflict of interest, and refrained from voting on any matters relating to Chelsea Commons.

18.     On or about June 18, 1997, the closing process for the Chelsea Commons project began.  This closing process included both the sale of the Greenacres Land and the closing of the tax-exempt revenue bonds issued by the Housing Finance Authority.  The closing process began on June 18, 1997, and continued until June 20, 1997.

19.     On June 19, 1997, the parties associated with the Chelsea Commons bond transaction learned that real estate closing documents showed that Hasner Realty was to receive a payment in connection with the Chelsea Commons transaction.

20.     Because LLOYD HASNER was legally and ethically prohibited from receiving a payment in connection with the Chelsea Commons transaction, the final closing of the Chelsea Commons transaction did not occur until LLOYD HASNER signed a letter which stated that LLOYD HASNER disclaimed any interest in any such payment for himself or Hasner Realty.

21.   Tierra Vista was a real estate project being developed in Osceola County, Florida. Neither LLOYD HASNER nor Hasner Realty earned a real estate commission relating to the Tierra Vista project.

22.   From in or about September, 1996, to on or about June 27, 1997, at Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

LLOYD HASNER,<br>
LISA FISHER, and<br>
RICHARD ELLINGTON,

did knowingly and willfully combine, conspire, confederate, agree and reach a tacit understanding with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, that is:

(a)  to knowingly and willfully devise a scheme and artifice to defraud and to obtain money and property by means of material, false and fraudulent pretenses, representations and promises, and, for the purpose of executing this scheme and artifice, to knowingly use and cause to be used the United States mails or private or commercial interstate carriers, in violation of Title 18, United States Code, Section 1341; and

(b)  to knowingly and willfully devise a scheme and artifice to deprive another of the intangible right of honest services, and, for the purpose of executing this scheme and artifice, to knowingly use and cause to be used the United States mails or private or commercial interstate carriers, in violation of Title 18, United States Code, Sections 1341 and 1346.

6

## OBJECTS OF THE CONSPIRACY

23.     It was an object of the conspiracy to unjustly enrich LLOYD HASNER on a

Housing Finance Authority transaction while permitting LLOYD HASNER to continue to serve

as the Chairman of the Housing Finance Authority.

24.     It was a further object of the conspiracy to conceal that LLOYD HASNER had

received unjust enrichment while serving as Chairman of the Housing Finance Authority.

25.     It was a further object of the conspiracy to conceal LLOYD HASNER's true

financial relationship with LISA FISHER.

26.     It was a further object of the conspiracy to deprive another of the intangible right

of LLOYD HASNER's honest services as Chairman and member of the Housing Finance

Authority.

27.     It was a further object of the conspiracy to defraud Main Street Realty of money

by means of material, false and fraudulent pretenses, representations and promises, that is, to

conceal from Main Street Realty that LLOYD HASNER had signed a document stating that he

disclaimed for himself or Hasner Realty any interest in any payment in connection with the

Chelsea Commons transaction.

## MANNER AND MEANS OF THE CONSPIRACY

28.     It was part of the conspiracy that, at the time LLOYD HASNER voted to hire

LISA FISHER as an independent consultant for the Housing Finance Authority, LLOYD

HASNER and LISA FISHER concealed that LLOYD HASNER had a financial conflict of

7

interest, in that he had an existing agreement with LISA FISHER to receive the Chelsea Commons real estate payment.

29.     It was a further part of the conspiracy that, under false and fraudulent pretenses, RICHARD ELLINGTON, LLOYD HASNER, and LISA FISHER created material, false and fraudulent documentation signed by LLOYD HASNER, purporting to disclaim any interest in any payment in connection with the Chelsea Commons transaction, and instead making it appear that monies to be paid to LLOYD HASNER actually had derived from the Tierra Vista project.

30.     It was further part of the conspiracy that LLOYD HASNER falsely represented to the parties to the Chelsea Commons closing that neither he nor Hasner Realty was receiving a payment in connection with the Chelsea Commons transaction.

31.     It was further part of the conspiracy that, despite the representations to the Housing Finance Authority and the parties to the Chelsea Commons closing, LLOYD HASNER would still receive the Chelsea Commons real estate payment, but that the payment would be disguised as a payment from the Tierra Vista project.

32.     It was further part of the conspiracy that RICHARD ELLINGTON and LISA FISHER helped to conceal LLOYD HASNER's receipt of the Chelsea Commons real estate payment.

33.     It was further part of the conspiracy that Hasner Realty received the Chelsea Commons real estate payment.

34.     It was further part of the conspiracy that the Chelsea Commons real estate payment was never disclosed to the parties to the Chelsea Commons closing, the members of the Housing Finance Authority, or the Palm Beach County Commission.

35.     It was further part of the conspiracy that LISA FISHER and LLOYD HASNER agreed not to disclose to Main Street Realty's owner that LLOYD HASNER had signed a document stating that he disclaimed for himself or Hasner Realty any interest in any payment in connection with the Chelsea Commons transaction.

## OVERT ACTS

36.     In furtherance of the conspiracy, and to effect its aims and objects, one or more of the co-conspirators committed at least one of the following overt acts in the Southern District of Florida:

a.      On or about November 13, 1996, LLOYD HASNER, as President of Hasner Realty, sent a letter to a person known to the grand jury registering LISA FISHER as a representative of Hawthorne in its capacity as potential purchaser of the Greenacres Land.

b.      On or before November 18, 1996, LLOYD HASNER and LISA FISHER entered into an agreement under which LLOYD HASNER, through Hasner Realty, would receive the Chelsea Commons real estate payment for his role in helping find the Greenacres Land for Hawthorne.

c.      On or about November 18, 1996, LLOYD HASNER voted to approve hiring LISA FISHER as a consultant to the Housing Finance Authority, but did not

9

disclose that he had an existing agreement with LISA FISHER to receive the Chelsea Commons real estate payment.

d.    On June 19, 1997, at approximately 1:01 p.m., during the Chelsea Commons closing, LISA FISHER told LLOYD HASNER that a major blunder occurred when a payment to Hasner Realty appeared on the real estate closing statement for the Greenacres Land.

e.    On June 19, 1997, at approximately 3:08 p.m., RICHARD ELLINGTON told LLOYD HASNER that a payment to Hasner Realty appeared on the real estate closing statement for the Greenacres Land, and had created a problem with the bond closing for Chelsea Commons.  RICHARD ELLINGTON then proposed to LLOYD HASNER that the payment to Hasner Realty be disguised as a payment from the Tierra Vista project, but warned that only RICHARD ELLINGTON, LISA FISHER, and LLOYD HASNER should know about it.

f.    On June 19, 1997, at approximately 3:19 p.m., LLOYD HASNER asked LISA FISHER to send him a written agreement that he would be paid $22,500 from LISA FISHER's share of the Tierra Vista commission.  LISA FISHER responded that she did not know if the owner of Main Street Realty would agree.  After LLOYD HASNER expressed concern that he was now going to sign a document purporting to disclaim his right to the money, LLOYD HASNER and LISA FISHER agreed to conceal the document from the owner of Main Street Realty.

10

g.    On June 19, 1997, at approximately 5:30 p.m., LLOYD HASNER told LISA FISHER that he could not sign a document purporting to disclaim his right to receive money from the Chelsea Commons transaction unless he was made whole on "the other end," meaning getting paid out of the Tierra Vista transaction.

h.    On June 19, 1997, at approximately 6:40 p.m., RICHARD ELLINGTON told LLOYD HASNER that Main Street Realty had agreed to pay LLOYD HASNER the Chelsea Commons real estate payment out of the Tierra Vista project. LLOYD HASNER then asked if Main Street Realty would send him a letter confirming this agreement.  RICHARD ELLINGTON replied that he did not want Main Street to send a letter because "It's a paper trail".

i.    On June 19, 1997, LLOYD HASNER faxed a letter to the Chelsea Commons closing agent, which stated that LLOYD HASNER disclaimed "on behalf of Hasner Realty, myself or any agent of Hasner Realty any interest in" any payment in connection with the Chelsea Commons transaction.

j.    On June 20, 1997, RICHARD ELLINGTON caused an opinion letter to be issued to the parties to the Chelsea Commons closing stating, among other things, (1) that the execution and delivery of the tax-exempt revenue bonds did not violate any law applicable to the Housing Finance Authority, and (2) that RICHARD ELLINGTON's law firm was unaware of any untrue or misleading statements of material fact in the Final Official Statement for the tax-exempt revenue bonds, or any omission of a material fact from the Final Official Statement.

11

k.   On or after June 20, 1997, LLOYD HASNER and LISA FISHER created a handwritten agreement asserting that Hasner Realty Corporation had earned an $18,000 real estate commission on the Tierra Vista project.

l.   On June 24, 1997, LISA FISHER told LLOYD HASNER that she would send him a check by Federal Express as soon as she received her Chelsea Commons real estate commission check.

m.   On or about June 26, 1997, LISA FISHER caused Main Street Realty to send its check number 11496 in the amount of $22,500 by Federal Express to Hasner Realty Corporation.  The memo line of the check read "Commission for Palm Beach Sale".

n.   On or about June 27, 1997, LLOYD HASNER caused Main Street Realty's check number 11496 to be received from a Federal Express envelope sent to him by LISA FISHER.

o.   On or about June 27, 1997, LLOYD HASNER caused Main Street Realty's check number 11496 in the amount of $22,500 to be deposited into the Hasner Realty checking account at Sun Trust.

p.   On or about June 27, 1997, LLOYD HASNER issued Hasner Realty check number 2814 for $1,500 to a person known to the grand jury and noted on the memo section of the check  "Commission -- Chelsea".

q.    On or about June 27, 1997, LLOYD HASNER issued Hasner Realty check

number 2815 for $1,500 to a person known to the grand jury and noted on the

memo section of the check "Commission -- Chelsea".

All in violation of Title 18, United States Code, Section 371.

### Counts Two through Six

### MAIL FRAUD

37.    The allegations of paragraphs 1 through 21 and 23 through 36 are reincorporated

as if fully stated herein.

38.    From in or about September, 1996, to on or about June 27, 1997, in Palm Beach

County, in the Southern District of Florida, and elsewhere, the defendants,

LLOYD HASNER,
LISA FISHER, and
RICHARD ELLINGTON,

knowingly and willfully devised and intended to devise a scheme and artifice to defraud and for

obtaining money by means of material, false, and fraudulent pretenses, representations, and

promises, knowing that the pretenses, representations and promises were false when made, and to

deprive another of the intangible right to honest services, and, for the purpose of executing this

scheme and artifice, and attempting so to do, did knowingly use and cause to be used the United

States mails or private or commercial interstate carriers, in violation of Title 18, United States Code,

Sections 1341 and 1346.

13

## OBJECTS OF THE SCHEME AND ARTIFICE

39.     The allegations contained in paragraphs 23 through 27 concerning the objects of

the conspiracy are realleged and incorporated by reference as if fully stated here as the objects of

the scheme and artifice to defraud.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

40.     The allegations contained in paragraphs 28 through 35 concerning the manner and

means of the conspiracy are realleged and incorporated by reference as if fully stated here as the

manner and means of the scheme to defraud.

## EXECUTION OF THE SCHEME

41.     On or about the dates set forth below as to each count, in the Southern District of

Florida, and elsewhere, for the purpose of executing the above-described scheme and artifice, and

attempting so to do, the defendants charged in each respective count, knowingly caused to be

deposited with, or received from the U.S. mails or Federal Express, a private or commercial

interstate carrier, a matter or thing delivered by the U.S. Mails, or Federal Express, as described

below:

| COUNT | DEFENDANTS | DATE | MAIL MATTER |
|-------|------------|------|-------------|
| 2 | LLOYD HASNER LISA FISHER RICHARD ELLINGTON | June 26, 1997 | Main Street Realtors check for $22,500 payable to "Hasner Realty," sent via Federal Express from LISA FISHER, 430 Main Street, Windermere, Florida to 11 SE 6th Avenue, Delray Beach, Florida |

14

| COUNT | DEFENDANTS | DATE | MAIL MATTER |
|---|---|---|---|
| 3 | LLOYD HASNER<br>LISA FISHER | June 3, 1997 | A South Trust Bank check in the amount of $5,658.28 issued to the order of Lisa Fisher & Company in connection with her consulting contract with the Housing Finance Authority deposited in the U.S. mails |
| 4 | LLOYD HASNER<br>LISA FISHER | April 30, 1997 | A First Union Bank check in the amount of $5,805.12 issued to the order of Lisa Fisher & Company in connection with her consulting contract with the Housing Finance Authority deposited in the U.S. mails |
| 5 | LLOYD HASNER<br>LISA FISHER | March 5, 1997 | A First Union Bank check in the amount of $5,157.50 issued to the order of Lisa Fisher & Company in connection with her consulting contract with the Housing Finance Authority deposited in the U.S. mails |
| 6 | LLOYD HASNER<br>LISA FISHER | January 29, 1997 | A First Union Bank check in the amount of $5,104.63 issued to the order of Lisa Fisher & Company in connection with her consulting contract with the Housing Finance Authority deposited in the U.S. mails |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## Count Seven

### MONEY LAUNDERING

42.     On or about June 27, 1997, at Delray Beach, Palm Beach County, in the Southern

District of Florida, the defendant,

### LLOYD HASNER,

did knowingly engage and attempt to engage in a monetary transaction, through a financial

institution engaged in interstate commerce, in criminally derived property of a value greater than

$10,000, that is, the defendant issued Hasner Realty check number 2813, in the amount of

$18,000, from the Hasner Realty checking account at Sun Trust, to Castle Florida Building

Corporation, such property having been derived from a specified unlawful activity, that is, mail

fraud in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## Count Eight

### FALSE STATEMENT

35.  On or about February 28, 2000, at West Palm Beach, Palm Beach County, in the

Southern District of Florida, in a matter within the jurisdiction of the executive branch of the

Government of the United States, the defendant,

### LISA FISHER,

did knowingly and willfully make a false and fraudulent material statement in that the defendant

stated to a Special Agent of the Federal Bureau of Investigation that: (1) she had no agreement to

give Lloyd Hasner any funds whatsoever related to Chelsea Commons; (2) that in fact Lloyd

16

Hasner was not paid a real estate commission on the Chelsea Commons property; and (3) that she

had no side agreement with Lloyd Hasner, when in truth and in fact, and as LISA FISHER then

well knew, Lloyd Hasner did receive funds emanating from Chelsea Commons, and the

defendant did have a side agreement with Lloyd Hasner to share part of her real estate

commission with him.

All in violation of Title 18, United States Code, Section 1001.

A TRUE BILL

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

STEPHEN CARLTON
ASSISTANT UNITED STATES ATTORNEY

BRUCE E. REINHART
ASSISTANT UNITED STATES ATTORNEY

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

01-8069 CR-DIMITROULEAS

UNITED STATES OF AMERICA           CASE NO.

MAGISTRATE JUDGE
SNOW

v.                                 **CERTIFICATE OF TRIAL ATTORNEY***

LLOYD HASNER, LISA FISHER, and     **Superseding Case Information:**
RICHARD ELLINGTON

**Court Division:** (Select One)

|  | |
|---|---|
| New Defendant(s) | Yes ____ No ____ |
| Number of New Defendants | ____ |
| Total number of counts | ____ |

____ Miami    ____ Key West
____ FTL   _X_ WPB ____ FTP

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:      (Yes or No) No_____
      List language and/or dialect _____

4.    This case will take  _6_  days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
      (Check only one)                              (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _X_ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | _X_ |
| V | 61 days and over | _____ | | |

6.    Has this case been previously filed in this District Court? (Yes or No)   No___
If yes:
Judge: _____   Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) No_____
If yes:
Magistrate Case No.  _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____   District of _____

Is this a potential death penalty case? (Yes or No) No_____
7.    Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?  _X_ Yes ___ No  If yes, was it pending in the Central Region? __ Yes _X_ No

8.    Did this case originate in the Narcotics Section, Miami? ___ Yes _X_ No

_Bruce Reinhart_

BRUCE E. REINHART
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500285

*Penalty Sheet(s) attached                                      REV.6/27/00

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

# 01-8069CR-DIMITROULEAS

Defendant's Name:   LLOYD HASNER

**MAGISTRATE JUDGE
SNOW**

Count #: 1

\*Max. Penalty: 5 Years Imprisonment; $250,000 Dollar Fine

Counts # 2-6:

\*Max. Penalty:  5 Years Imprisonment; $250,000 Dollar Fine

Count # 7:

\*Max. Penalty: 10 Years Imprisonment; $250,000 Dollar Fine

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

**01-8069**CR - DIMITROULEAS

Defendant's Name:   LISA FISHER

MAGISTRATE JUDGE
SNOW

Count #: 1

---

*Max. Penalty: 5 Years Imprisonment; $250,000 Dollar Fine

---

Counts # 2-6:

---

*Max. Penalty:  5 Years Imprisonment; $250,000 Dollar Fine

---

Count # 8:

---

*Max. Penalty:  5 Years Imprisonment; $250,000 Dollar Fine

---

Count #:

---

*Max. Penalty:

---

Count #:

---

*Max. Penalty:

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

## 01-8069 CR - DIMITROULEAS

Defendant's Name: RICHARD ELLINGTON

Count #: 1

**MAGISTRATE JUDGE**
~~SNOW~~

*Max. Penalty: 5 Years Imprisonment; $250,000 Dollar Fine

Counts # 2-6:

*Max. Penalty:  5 Years Imprisonment; $250,000 Dollar Fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

LLOYD HASNER
_____

DEFENDANT

Personal surety bond in the amount of $100,000 is recommended as to defendant.


BRUCE E. REINHART
ASSISTANT UNITED STATES ATTORNEY

LISA FISHER
_____

DEFENDANT

Personal surety bond in the amount of $100,000 is recommended as to
defendant.

BRUCE E. REINHART
ASSISTANT UNITED STATES ATTORNEY

LISA FISHER

DEFENDANT

Personal surety bond in the amount of $100,000 is recommended as to defendant.

BRUCE E. REINHART
ASSISTANT UNITED STATES ATTORNEY

RICHARD ELLINGTON

DEFENDANT

Personal surety bond in the amount of $100,000 is recommended as to defendant.

BRUCE E. REINHART
ASSISTANT UNITED STATES ATTORNEY

FGJ 00-02 (WPB)

FGJ 002-040

# No. 01-8069CR-DIMITROULEAS

MAGISTRATE JUDGE
SNOW

## UNITED STATES DISTRICT COURT

| District of | Florida |
|---|---|
| Southern | |
| Northern | Division |

# THE UNITED STATES OF AMERICA

vs.

LLOYD HASNER, LISA FISHER,

and RICHARD ELLINGTON

## INDICTMENT

18 USC 371
18 USC 1001
18 USC 1341
18 USC 1346
18 USC 1957
18 USC 2

A true bill.

_____
Foreman

Filed in open court this _____

of _____ , A.D. 20___

_____  _____
day                        Clerk

Bail. $ _____

GPO 863 928